Andrew G. Deiss (USB 7184)
Wes Felix (USB 6539)
DEISS LAW PC
10 West 100 South, Suite 425
Salt Lake City, UT 84101
Tel: 801-433-0226
adeiss@deisslaw.com
wfelix@deisslaw.com
*Attorneys for Receiver, Maria E. Windham*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| MARIA E. WINDHAM, as Receiver for MARQUIS PROPERTIES, LLC, et al, <br><br> Plaintiff, <br><br> vs. <br><br> KORY BOYD, an individual, and, RAKOR, LLC, a Utah limited liability company, <br><br> Defendants. | **COMPLAINT** <br> **(Ancillary Suit)** <br><br> Case No. _____ <br><br> Judge: _____ |

Maria E. Windham (the "Receiver"), as Receiver for Marquis Properties, LLC and the assets of the Marquis Properties Receivership Estate, complains against Kory Boyd and Rakor, LLC, ("Defendants") as follows:

## INTRODUCTION

This lawsuit is related to a real estate Ponzi scheme (the "Marquis Ponzi Scheme") perpetrated by Chad Deucher through Marquis Properties, LLC ("Marquis Properties"), and related entities. Chad Deucher pleaded guilty in his criminal case to operating Marquis Properties as a Ponzi scheme from 2010 to 2016, and he is currently serving 84 months of prison time. *See United States v. Chad Roger Deucher*, United States District Court for the District of Utah, Case No. 2:16-CR-189-DN.

This is one of several "claw back" lawsuits concerning the Marquis Ponzi Scheme filed by the Receiver appointed by the Court in the parallel civil case filed by the Securities and Exchange Commission ("SEC"). In this lawsuit, the Receiver seeks to "claw back" into the Marquis Properties Receivership Estate assets paid as commissions that Marquis Properties transferred to the Defendants.

Defendants must return the payments they received from Marquis Properties because Chad Deucher, acting with fraudulent intent in furtherance of the Marquis Ponzi Scheme while Marquis Properties was insolvent, directed Marquis Properties to transfer the assets identified below to Defendants in a series of similar payments of Commissions. Marquis Properties did not receive reasonably equivalent value for these transfers, and the Defendants were unjustly enriched. The value of the assets Chad Deucher wrongfully directed Marquis Properties to pay to the Defendants amounts to at least $449,889.90.

## PARTIES

1.     Maria E. Windham is the court-appointed Receiver for Marquis Properties and the Marquis Properties Receivership Estate.

2.     Rakor LLC ("Rakor") is a Utah limited liability corporation with its principal

place of business in Lehi, Utah.

3.     Kory Boyd is an individual who on information and belief resides in Lehi, Utah.

4.     Defendants received assets that were improperly transferred from

Marquis Properties' assets as described herein.

## JURISDICTION AND VENUE

5.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 754, and 28 U.S.C. §

1331 and is proper pursuant to principles of ancillary or supplemental jurisdiction under 28

U.S.C. § 1367.

6.     This Court has personal jurisdiction over Defendants pursuant to 28 U.S.C §

754 and 28 U.S.C. 1692

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 28 U.S.C. §

754 as this action is related to the SEC's parallel civil case pending in this District and the

Receiver was appointed in this District.

## GENERAL ALLEGATIONS

### Marquis Ponzi Scheme

8.     Marquis Properties was operated by its principal Chad Deucher as a Ponzi scheme

at all times relevant to the matters asserted in this action.

9.     On information and belief, Chad Deucher raised this money from over 250

investors in Marquis Properties.

10.     Chad Deucher represented to investors that Marquis Properties offered

investments in turnkey real estate properties, promissory notes secured by real properties, and

joint venture agreements to purchase real properties. In that regard, Chad Deucher represented

that Marquis Properties located, purchased, renovated and sold single family and small multi-

family homes in lucrative areas of the country. Chad Deucher told investors that Marquis

Properties has proven renovation crews, property managers and realtors on the ground to assist

with all stages of the project, eliminating the need for direct involvement.

11.     Chad Deucher represented to investors that they would receive guaranteed return

of principal and returns on their investment in the form of rental income, interest payments,

and/or profits from the sale of properties.

12.     The investments offered by Marquis Properties constitute securities.

13.     Chad Deucher represented that investments with Marquis Properties were safe,

low-risk, or risk-free because investment proceeds would be secured by a first deed of trust on

property wholly owned by Marquis, and that investments would be "over-collateralized."

14.     Chad Deucher omitted to disclose to investors, however, that (a) the properties

Marquis Properties offers as collateral were not owned by Marquis Properties, were substantially

encumbered, and/or were in uninhabitable or blighted condition; (b) that Marquis Properties

itself was insolvent and unable to make investor interest and principal payments according to

terms of agreements; and (c) that investor returns were being paid from the funds of new

investors.

15.     In April 2017, Chad Deucher pleaded guilty in his parallel criminal case, Case

No. 2:16-CR-189-DN, to operating Marquis Properties as a Ponzi scheme between March 2010

and February 2016.

16.     On October 11, 2017, Chad Deucher was sentenced to 84 months in federal

prison, and, upon his release, 36 months of supervised release. Mr. Deucher was also ordered to

pay $16,560,552.00 in restitution.

**The SEC Action**

17.     On January 19, 2016, in case No. 2:16-cv-00040-JNP, the Securities and

Exchange Commission ("SEC") filed suit (the "SEC Action") against Chad Deucher, Richard

Clatfelter and Marquis Properties, LLC. Chad Deucher's wife, Jessica Deucher, was named as a

relief defendant.

18.     On January 20, 2016, this Court entered the Order Freezing Assets and Protecting

Documents (Dkt. No. 10) (the "Freeze Order").

19.     The Freeze Order specifically ordered that:

Except as otherwise specified herein, all of Defendants' Assets are frozen. All persons
and entities with direct or indirect control over any of Defendants' Assets, who receive
actual notice of this order, are hereby restrained and enjoined from directly or indirectly
transferring, setting off, receiving, changing, encumbering, concealing, selling, pledging,
assigning, liquidating or otherwise disposing of or withdrawing such assets. This freeze
shall include, but is not limited to, Defendants' Assets that are on deposit with financial
institutions such as banks, brokerage firms and mutual funds. Such institutions are
directed to hold or retain within their control and prohibit the withdrawal, removal,
transfer, or other disposal of any such assets, funds, or other properties.

*See id.* at 2-3.

20.     On January 18, 2017, the Court entered the Order Appointing Receiver, pursuant

to which Maria E. Windham was appointed Receiver. (*See* Dkt. No. 110.)

21.     On October 24, 2017, the Court amended the terms of the Order Appointing

Receiver and issued an Amended Order Appointing Receiver. (Dkt. No. 182.)

22.     On January 12, 2018, the Court entered a further Order Reappointing Maria

E. Windham Receiver that reappointed Ms. Windham on the same terms. (Dkt. No. 205),

This procedure is utilized to reset the 10-day clock to file notices pursuant to 28 U.S.C. §

754.

23.     Defendants entered into Tolling Agreements with Maria E. Windham

("Tolling Agreements") tolling any statutes of limitations period to March 30, 2018.

24.     The Court found appointment of the Receiver to be "necessary and appropriate for the purposes of marshaling and preserving Defendants' Marquis Properties (the 'Entity Receivership Defendant') and Chad Deucher's (the 'Individual Receivership Defendant') (collectively the Receivership Defendants') assets that were frozen by the [Freeze Order]." (Dkt. No. 182).

25.     The Court defined the "Receivership Estate" as the assets of Marquis Properties, LLC and Chad Deucher that were frozen by the Court's Order Freezing Assets on January 20, 2016 ("Frozen Assets"), as well as the assets of any other entities or individuals that: (a) are attributable to funds derived from investors or clients of the Defendants; (b) are held in constructive trust for the Defendants; and/or (c) were fraudulently transferred by the Defendants (the "Recoverable Assets").[1] (*Id.* at 1–2.)

26.     Further, the Court found that based on the record in the proceedings before it, the Frozen Assets and Recoverable Assets include, but are not limited to all assets of the following entities owned or operated by the Individual Receivership Defendant: Marquis Air, LLC; Marquis Companies, LLC; Marquis Enterprises, LLC; Marquis, LLC; Marquis Direct; Invo; and Invo Direct (collectively with Marquis Properties, the "Marquis Entities"). (*Id.* at 2.)

27.     Moreover, the Court ordered that in order for any of the Receivership Defendants' property or interest in property, of any kind whatsoever, whether real or personal, whether direct or indirect, to be excluded from the Receivership Estate, the Receivership Defendants were

---

[1] Except, the Court excluded the residence titled in the name of Relief Defendant, Jessica Deucher located at 1136 North 650 East, Orem Utah from the Receivership Estate. (Dkt. No. 182).

required to file an accounting with the Court, including books and records sufficient to identify a source of the assets that is unconnected with investor funds, frozen assets, or other fraudulent activities, within 20 days of the entry of Amended Order Appointing Receiver. (*Id.* at ¶ 4.)

28.     Pursuant to the terms of the Amended Order Appointing Receiver, the Receiver is charged with, among other things, investigating the activities of the Receivership Defendants, gathering and recovering assets of the Receivership Defendants, including pursuing claims to recover those assets, as necessary. Specifically, Paragraph 6 of the Amended Order Appointing Receiver vests the Receiver with, among other authority, "all powers and authority of a receiver at equity." (*See id.* at ¶ 6.) The Receiver is directed to "pursue and preserve all of the Marquis Entities claims (*id.* at 7.), and she has authority to "bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging her duties as Receiver." (*Id.* at ¶ 9(I).) *See also id.* ¶36

**Transfer of Commission Payments to Defendants**

29.     While Chad Deucher operated Marquis Properties as a Ponzi scheme, and while Marquis Properties was insolvent, Chad Deucher directed payments of commissions to Defendants from Marquis Properties bank accounts where the funds of victim investors were deposited.

30.     Chad Deucher wrongfully caused Marquis Properties to make these commission payments, which constitute a related series of payment transactions, in furtherance of his fraud.

31.     On information and belief Chad Deucher caused Marquis Properties to make these commission payments for the purpose for bringing additional investors into the Ponzi scheme.

32.     Each and every one of these commission payments reduced the assets of Marquis Properties available to repay investors.

33.     Upon information and belief, the Defendants did not return reasonably equivalent value for each of the payments received and did not take the payments in good faith without reason to know the payment was improper.

### Specific Payments Made to Defendants

34.     Chad Deucher directed Marquis Properties to pay Defendants Kory Boyd and Rakor LLC commission payments between at least October, 2012 and September, 2015 in furtherance of the Marquis Ponzi Scheme, including without limitation the following payments:

35.     On or about September 25, 2015, a wire payment from an account identified as Zion-4175 in the amount of $45,000.

36.     On or about January 21, 2015, a wire payment from an account identified as USB-8978 in the amount of $49,513.

37.     On or about January 2, 2015, a wire payment from an account identified as USB-8978 in the amount of $34,000.

38.     On or about December 22, 2014, a wire payment from an account identified as USB-8978 in the amount of $50,000.

39.     On or about December 22, 2014, a wire payment from an account identified as USB-8978 in the amount of $4,633.30.

40.     On or about December 9, 2014, a wire payment from an account identified as USB- 9561 in the amount of $12,475.

41.     On or about December 4, 2014, a wire payment from an account identified as USB- 8978 in the amount of $49,513.

42.     On or about December 4, 2014, a wire payment from an account identified as USB-8978 in the amount of $25,000.

43.     On or about November 21, 2014, a wire payment from an account identified as USB-9561 in the amount of $50,000.

44.     On or about November 18, 2014, a wire payment from an account identified as USB-9561 in the amount of $50,000.

45.     On or about November 18, 2014, a wire payment from an account identified as USB-9561 in the amount of $13,087.

46.     On or about November 14, 2014, a wire payment from an account identified as USB-9561 in the amount of $50,000.

47.     On or about November 12, 2014, a wire payment from an account identified as USB-9561 in the amount of $50,000.

48.     On or about November 4, 2014, a wire payment from an account identified as USB-9561 in the amount of $50,000.

49.     On or about November 3, 2014, a check from an account identified as USB-9561 in the amount of $2,100.

50.     On or about September 3, 2014, a wire transfer from an account identified as USB-8978 in the amount of $100,000.

51.     On or about September 2, 2014, a wire transfer from an account identified as USB-8978 in the amount of $50,000.

52.     On or about September 2, 2014, a wire transfer from an account identified as

USB-8978 in the amount of $4,000.

53.     On or about September 2, 2014, a wire transfer from an account identified as USB-2772 in the amount of $33,833.

54.     On or about August 1, 2014, a wire transfer from an account identified as USB-2772 in the amount of $48,433.

55.     On or about July 3, 2014, a wire transfer from an account identified as USB-8978 in the amount of $50,854.65.

56.     On or about June 18, 2014, a wire transfer from an account identified as USB-8978 in the amount of $19,800.

57.     On or about May 23, 2014, a wire transfer from an account identified as USB-9561 in the amount of $48,433.

58.     On or about May 21, 2014, a wire transfer from an account identified as USB-9561 in the amount of $50,000.

59.     On or about May 21, 2014, a wire transfer from an account identified as USB-9561 in the amount of $100,000.

60.     On or about May 21, 2014, a wire transfer from an account identified as USB-8978 in the amount of $10,000.

61.     On or about April 28, 2014, a wire transfer from an account identified as USB-8978 in the amount of $25,608.

62.     On or about April 15, 2014, a wire transfer from an account identified as USB-8978 in the amount of $48,649.65.

63.     On or about March 28, 2014, a wire transfer from an account identified as USB-8978 in the amount of $12,000.

64.     On or about March 21, 2014, a wire transfer from an account identified as USB-8978 in the amount of $17,430.

65.     On or about March 10, 2014, a wire transfer from an account identified as USB-9561 in the amount of $71,049.30.

66.     On or about February 14, 2014, a wire transfer from an account identified as USB-9561 in the amount of $2,205.

67.     On or about February 14, 2014, a wire transfer from an account identified as USB-9561 in the amount of $13,125.

68.     On or about January 7, 2014, a wire transfer from an account identified as WFB-1664 in the amount of $14,600.

69.     On or about December 23, 2013, a wire transfer from an account identified as USB-9561 in the amount of $48,433.

70.     On or about December 12, 2013, a wire transfer from an account identified as USB-8978 in the amount of $50,000.

71.     On or about November 27, 2013, a wire transfer from an account identified as USB-9561 in the amount of $66,000.

72.     On or about October 24, 2013, a wire transfer from an account identified as USB-8978 in the amount of $30,000.

73.     On or about October 16, 2013, a wire transfer from an account identified as USB-9561 in the amount of $14,600.

74.     On or about October 8, 2013, a wire transfer from an account identified as USB-9561 in the amount of $15,000.

75.     On or about September 20, 2013, a wire transfer from an account identified

11

as USB-9561 in the amount of $17,000.

76.     On or about September 5, 2013, a wire transfer from an account identified as USB-9561 in the amount of $30,000.

77.     On or about August 30, 2013, a wire transfer from an account identified as USB-9561 in the amount of $15,000.

78.     On or about August 21, 2013, a wire transfer from an account identified as USB-9561 in the amount of $18,758.

79.     On or about August 13, 2013, a wire transfer from an account identified as USB-9561 in the amount of $19,294.50.

80.     On or about August 5, 2013, a wire transfer from an account identified as USB-9561 in the amount of $10,000.

81.     On or about July 26, 2013, a wire transfer from an account identified as USB-9561 in the amount of $18,602.50.

82.     On or about July 11, 2013, a wire transfer from an account identified as USB-9561 in the amount of $6,000.

83.     On or about June 27, 2013, a wire transfer from an account identified as USB-9561 in the amount of $125,000.

84.     On or about June 26, 2013, a wire transfer from an account identified as USB-9561 in the amount of $125,000.

85.     On or about June 24, 2013, a check from an account identified as USB-9561 in the amount of $2,100.

86.     On or about June 5, 2013, a wire transfer from an account identified as USB-9561 in the amount of $16,000.

87.     On or about May 23, 2013, a check from an account identified as USB-9561 in the amount of $2,100.

88.     On or about May 8, 2013, a check from an account identified as USB-9561 in the amount of $16,000.

89.     On or about April 19, 2013, a check from an account identified as USB-9561 in the amount of $2,100.

90.     On or about April 9, 2013, a wire transfer from an account identified as USB-9561 in the amount of $6,000.

91.     On or about March 18, 2013, a check from an account identified as USB-9561 in the amount of $2,100.

92.     On or about March 11, 2013, a wire transfer from an account identified as USB-9561 in the amount of $6,000.

93.     On or about February 20, 2013, a wire transfer from an account identified as USB-9561 in the amount of $2,100.

94.     On or about January 24, 2013, a wire transfer from an account identified as USB-9561 in the amount of $2,100.

95.     On or about December 17, 2012, a wire transfer from an account identified as USB-9561 in the amount of $1,800.

96.     On or about December 5, 2012, a wire transfer from an account identified as USB-9561 in the amount of $35,000.

97.     On or about November 21, 2012, a wire transfer from an account identified as USB-9561 in the amount of $2,160.

98.     On or about October 31, 2012, a wire transfer from an account identified as

USB-9561 in the amount of $34,000.

99.     On or about October 1, 2012, a wire transfer from an account identified as USB-9561 in the amount of $1,800.

100.    Chad Deucher caused Marquis Properties to identify these transfers to Kory Boyd and Rakor LLC in its records as Investor Distributions.

## FIRST CLAIM FOR RELIEF
### (Fraudulent Transfer – Utah Uniform Fraudulent Transfer Act)

101.     The Receiver realleges and incorporates by this reference the foregoing paragraphs of the Complaint.

102.    Defendants received transfers of assets from Marquis Properties.

103.    At all times relevant to the matters asserted herein, Chad Deucher operated Marquis Properties as a Ponzi scheme.

104.    Because the transfers were made while Marquis Properties was operated as a Ponzi scheme, as a matter of law, these transfers were made by Marquis Properties with the intent to hinder, delay or defraud creditors and/or investors of Marquis Properties.

105.    Furthermore, the transfers were made at a time when Marquis Properties was insolvent.

106.    The payments were made from investor funds and reduced the amount of money available to return to investors.

107.    On information and belief Marquis Properties did not receive reasonably equivalent value for the transfers and Defendants did not take the payments in good faith.

## SECOND CLAIM FOR RELIEF
### (Unjust enrichment – All Defendants)

108.    The Receiver realleges and incorporates by this reference the foregoing

paragraphs of the Complaint.

109.   A benefit was conferred upon the Defendants by transfer of assets belonging to Marquis Properties to the Defendants.

110.   Defendants knew of the benefit conferred upon them by receipt of assets from Marquis Properties.

111.   Defendants' retention of assets conferred by Marquis property, which constitute investments of injured victims of the Marquis Ponzi Scheme, would be inequitable under the circumstances, without payment of the value of the assets to the Receiver for return to the injured persons.

112.   For example, but without limitation:

113.   At all times relevant to the matters asserted herein, Defendants did not have a license to sell securities and received a commission in relation to the sale of securities and/or otherwise sold securities in violation of applicable securities laws.

114.   Defendants could not legally accept commissions for bringing investors into the Ponzi scheme in violation of securities laws.

115.   It would be unjust to allow Defendants to retain these illegally obtained commissions.

**WHEREFORE**, the Receiver prays as follows:

A. The Receiver requests that Defendants be ordered to return to the Receivership Estate the funds that they received from Marquis Properties, and that judgment be entered against Defendants and in favor of the Receiver for the total amount transferred to each Defendant;

B. In the case that the funds were spent to acquire any real or personal property, the

Receiver requests that a constructive trust be imposed upon the property, and an order that it must immediately be turned over to the Receiver. Further, the Receiver requests that she be granted any other relief, both special and general, to which she may be justly entitled;

      C.  For prejudgment interest; and

      D.  For such other relief as the Court may allow.


    RESPECTFULLY SUBMITTED this 29th day of March, 2018.


                  DEISS LAW PC

                  /s/ Andrew G. Deiss
                  Andrew G. Deiss
                  *Counsel for the Receiver, Maria E. Windham*